UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JAMES E. PHILLIPS, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | No. 1:23-cv-00046-JMS-MKK |
| | ) | |
| SURGUY, *SGT.*, T. SOLOMON, and R. GOODNIGHT, | ) | |
| | ) | |
| *Defendants*. | ) | |

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff James Phillips was previously incarcerated at Pendleton Correctional Facility ("PCF") and alleges that Defendants Sgt. Surguy (a Correctional Officer at PCF), Thomas Solomon (a Caseworker at PCF), and Ross Goodnight (a Caseworker at PCF) all violated his constitutional rights in connection with an incident where Mr. Phillips was handcuffed while being moved within PCF.  Mr. Phillips claims that the handcuffing was done in retaliation for him requesting a copy of his six-month history of commissary transactions ("Six-Month Account Statement") and constituted excessive force and that Defendants were then deliberately indifferent to injuries caused by the handcuffing.  Specifically, Mr. Phillips asserts the following claims against all Defendants: (1) an Eighth Amendment Excessive Force claim; (2) an Eighth Amendment Failure to Intervene claim; (3) an Eighth Amendment Deliberate Indifference to a Serious Medical Need claim; and (4) a First Amendment Retaliation claim.[1]  [*See* Filing No. 25.] Defendants have filed a Motion for Summary Judgment as to all of Mr. Phillips' claims, [Filing No. 82], and a Motion to Strike Plaintiff's Sur-Reply, [Filing No. 98], and Mr. Phillips has filed a

---

[1] The Court screened Mr. Phillips' Amended Complaint pursuant to 28 U.S.C. § 1915A, and dismissed additional claims Mr. Phillips asserted against PCF and PCF's Warden.  [Filing No. 25.]

Motion to Strike the Defendants['] Motion to Strike Plaintiff['s] Sur-Reply, [Filing No. 99].  All of the motions are ripe for the Court's consideration.

## I.
### MOTIONS TO STRIKE

After Defendants filed their reply in support of their Motion for Summary Judgment, Mr. Phillips filed a 12-page sur-reply.  [Filing No. 97.]  Defendants have filed a Motion to Strike Plaintiff's Sur-Reply, arguing that none of the circumstances for which a sur-reply is allowed are present.  [Filing No. 98.]  Mr. Phillips has filed a Motion to Strike the Defendants['] Motion to Strike Plaintiff['s] Sur-Reply, [Filing No. 99], which the Court treats as a response to Defendants' Motion to Strike.

In their Motion to Strike, Defendants argue that they did not cite any new evidence in their reply and that Mr. Phillips should not be permitted to submit new evidence in connection with his sur-reply.  [Filing No. 98 at 1-2.]  They note that Mr. Phillips' sur-reply does not "contain any material which could not have been asserted in [his] original response."  [Filing No. 98 at 3.]

Mr. Phillips asserts in his Motion to Strike that Defendants' reply raises arguments not made in their opening brief and that they "were attacking the arguments that [he] made in his Response."  [Filing No. 99 at 1.]  He also argues that Defendants cite new evidence in their reply.  [Filing No. 99 at 1.]

The "purpose for having a motion, response and reply is to give the movant the final opportunity to be heard and to rebut the non-movant's response, thereby persuading the court that the movant is entitled to the relief requested by the motion." *Lady Di's, Inc. v. Enhanced Servs. Billing, Inc.*, 2010 WL 1258052, at *8 (S.D. Ind. Mar. 25, 2010) (cleaned up).  Local Rule 56-1(d) allows a summary judgment sur-reply only in limited circumstances – if the movant cites new evidence in the reply or objects to the admissibility of the evidence cited in the response.  Where

2

a sur-reply is permitted, it must be limited to the new evidence or objections. *Best v. Safford*, 2018 WL 1794911, at *2 (S.D. Ind. Apr. 16, 2018). "New evidence" only means that a response is allowed by the non-movant to new evidence cited by the movant, not that the non-movant is allowed to introduce entirely new evidence. *Id.*

Defendants did not cite to new evidence in their reply nor did they object to the admissibility of evidence that Mr. Phillips cited to in his response. Rather, they addressed the arguments Mr. Phillips made in his response. There were no appropriate grounds for Mr. Phillips to file a sure-reply. Additionally, to the extent Mr. Phillips cites to new evidence in his sur-reply, "[t]he Court has the discretion to deny a request for leave to file a supplementary response to a motion for summary judgment where the party does not explain why the materials in the supplementary response could not have been discovered earlier, or why he had not immediately sought to amend or extend the filing deadline." *Spierer v. Rossman*, 2014 WL 4908023, at *3 (S.D. Ind. Sept. 30, 2014), *aff'd*, 798 F.3d 502 (7th Cir. 2015) (citing *Lac Du Flambeau Band of Lake Superior Chippewa Indians v. Stop Treaty Abuse-Wis., Inc.*, 991 F.2d 1249, 1257 (7th Cir. 1993)).

Additionally, Federal Rule of Civil Procedure 56(d) provides that "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Mr. Phillips did not seek any extension of time or a re-opening of discovery in this matter, nor did he ever move to compel discovery from Defendants that he belatedly claimed was not provided. "In managing their caseloads, district courts are entitled to – indeed they must – enforce deadlines." *Flint v. City of Belvidere*, 791 F.3d 864, 768 (7th Cir. 2015).

The Court **GRANTS** Defendants' Motion to Strike Plaintiff's Sur-Reply, [Filing No. 98],
**DENIES** Mr. Phillips' Motion to Strike the Defendants['] Motion to Strike Plaintiff['s] Sur-Reply,
[Filing No. 99], and **DIRECTS** the Clerk to **STRIKE** Mr. Phillips' Sur-Reply, [Filing No. 97].

## II.
### MOTION FOR SUMMARY JUDGMENT

#### A.  Standard of Review

A motion for summary judgment asks the Court to find that a trial is unnecessary because
there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment
as a matter of law.  *See* Fed. R. Civ. P. 56(a).  When reviewing a motion for summary judgment,
the Court views the record and draws all reasonable inferences from it in the light most favorable
to the nonmoving party.  *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572-73 (7th Cir.
2021).  It cannot weigh evidence or make credibility determinations on summary judgment
because those tasks are left to the fact-finder.  *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir.
2014).  A court only has to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3);
it need not "scour the record" for evidence that might be relevant.  *Grant v. Trs. of Ind. Univ.*, 870
F.3d 562, 573-74 (7th Cir. 2017) (cleaned up).  Moreover, "where a reliable videotape clearly
captures an event in dispute and blatantly contradicts one party's version of the event so that no
reasonable jury could credit that party's story, a court should not adopt that party's version of the
facts for the purpose of ruling on a motion for summary judgment."  *McCottrell v. White*, 933 F.3d
651, 661 n.9 (7th Cir. 2019) (citing *Scott v. Harris*, 550 U.S. 372, 380-81 (2007)).

A party seeking summary judgment must inform the district court of the basis for its motion
and identify the record evidence it contends demonstrates the absence of a genuine issue of
material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Whether a party asserts that a
fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to

4

particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

### B. Factual Background

The facts stated below are not necessarily objectively true, but as the summary judgment standard requires, the undisputed facts and the disputed evidence are presented in the light most favorable to "the party against whom the motion under consideration is made." *Premcor USA, Inc. v. Am. Home Assurance Co.*, 400 F.3d 523, 526-27 (7th Cir. 2005). In other words, because Defendants have moved for summary judgment under Rule 56(a), the Court views and recites the evidence in the light most favorable to Mr. Phillips, including giving him the benefit of conflicting evidence, and draws all reasonable inferences in his favor. *Ziccarelli v. Dart*, 35 F.4th 1079, 1083 (7th Cir. 2022); *Khungar*, 985 F.3d at 572-73. This means that where Mr. Phillips has submitted admissible evidence regarding his version of events, the Court accepts his version as true for the purposes of summary judgment, ignoring Defendants' conflicting evidence, except for video.

#### 1. The December 14, 2022 Incident

On December 14, 2022, while Mr. Phillips was incarcerated at PCF, Caseworkers Solomon and Goodnight handcuffed him and let him out of his cell in order to pick up his legal mail in the legal holding cell. [Filing No. 8 at 4.] All inmates within G Cell House must be handcuffed at all times when being escorted to and from their cell. [Filing No. 83-2 at 2; Filing No. 83-4 at 27.] Mr. Phillips' cell was approximately 30 feet from the legal holding cell. [Filing No. 83-4 at 29.] While Mr. Phillips was in the legal holding cell (with his handcuffs removed), Caseworkers

Solomon and Goodnight were handing out legal mail to offenders in G Cell House.  [Filing No. 83-1 at 1.]

While he was in the legal holding cell, Mr. Phillips requested his Six-Month Account Statement from Caseworkers Solomon and Goodnight.  [Filing No. 83-1 at 1.]  They notified Mr. Phillips that they would not be able to get it for him immediately because they were busy and advised him to submit a written request to Caseworker Goodnight, who told Mr. Phillips that he could get the information for him.  [Filing No. 83-1 at 1; Filing No. 83-2 at 1.]  Mr. Phillips then became "upset" and "irate."  [Filing No. 83-1 at 1; Filing No. 83-2 at 1.]

Sgt. Surguy overheard Mr. Phillips having a "loud argument" with Caseworkers Solomon and Goodnight while he was in the legal holding cell, which lasted for about ten minutes.  [Filing No. 83-3 at 1.]  Sgt. Surguy heard either Caseworker Solomon or Caseworker Goodnight tell Mr. Phillips to submit to handcuffs or he would be sprayed with oleoresin capsicum ("OC Spray").  [Filing No. 83-3 at 1.]

Caseworker Goodnight ordered Mr. Phillips to submit to manual restraints to be escorted back to his cell.  [Filing No. 83-2 at 2.]  Mr. Phillips refused to submit to manual restraints and Caseworker Solomon pulled out his OC Spray and informed Mr. Phillips that he would spray him if he continued to resist.  [Filing No. 83-1 at 2; Filing No. 83-2 at 2.]  As Caseworker Goodnight tried to place handcuffs on Mr. Phillips, Mr. Phillips was moving around making it difficult to place the handcuffs on him.  [Filing No. 83-2 at 2; Filing No. 83-5 at 6:30-8:00.[2]]  Mr. Phillips eventually put one hand through the cuff port of the legal holding cell and Caseworker Goodnight was able to place one handcuff on Mr. Phillips's wrist.  [Filing No. 83-2 at 2.]  But Caseworker

---

[2] Filing No. 83-5 is a video of the legal holding cell.  The Court has reviewed the video, which shows Mr. Phillips in constant movement while Caseworker Goodnight and Sgt. Surguy try to handcuff him and resisting them after.  [Filing No. 83-5 at 3:30-8:00.]

Goodnight was not able to place the other handcuff on Mr. Phillips' other wrist. [Filing No. 83-3 at 1-2.]

After overhearing Mr. Phillips, Sgt. Surguy went into the legal holding cell area to assist Caseworkers Solomon and Goodnight. [Filing No. 83-3 at 1.] When Sgt. Surguy arrived, Caseworker Goodnight was still trying to place handcuffs on Mr. Phillips' other wrist, but Mr. Phillips was attempting to turn to avoid the other handcuff. [Filing No. 83-3 at 1; Filing No. 83-5 at 6:45-7:30.] Sgt. Surguy had observed other inmates use the tactic of turning to try to pull restraints out of the possession of custody staff. [Filing No. 83-3 at 2.] Sgt. Surguy grabbed Mr. Phillips' arm to control it so that Caseworker Goodnight could place the other handcuff on him. [Filing No. 83-3 at 2.]

Mr. Phillips states in his Affidavit that while he was pleading for the first handcuff to be loosened, Sgt. Surguy "snatched [his] already handcuffed hand from [Caseworker] Goodnight and started violently pulling, jerking, and snatching [his] handcuffed hand and wrist and proceeded to extend [his] handcuffed hand, wrist, arm, and shoulder above his head and wrist." [Filing No. 89 at 2.] Floyd Max Mason, Jr., another inmate at PCF, stated in an Affidavit that he observed the December 14, 2022 incident and that Sgt. Surguy "snatch[ed]" Mr. Phillips' "cuffed hand and arm and jerk[ed] them out and up and hyperextend[ed] his arm," and that he heard Mr. Phillips "screaming in pain." [Filing No. 91 at 13-14.] Mr. Phillips was belligerent and making threatening statements to Defendants, including that he was going to stab Sgt. Surguy and that he would have someone kill Sgt. Surguy. [Filing No. 83-3 at 2.]

Once Mr. Phillips was outside of the legal holding cell, he tried to break free from Caseworkers Solomon's and Goodnight's control and lunged towards Sgt. Surguy. [Filing No. 83-3 at 2.] Sgt. Surguy grabbed Mr. Phillips and forced him against a wall to gain control of him.

[Filing No. 83-3 at 2; Filing No. 83-6 at 7:00-8:30.[3]]  Caseworkers Solomon and Goodnight and Sgt. Surguy then escorted Mr. Phillips back to his cell and removed his handcuffs.  [Filing No. 83-2 at 2; Filing No. 83-3 at 2.]

### 2.  Mr. Phillips' Injuries and Requests for Medical Care

Mr. Phillips testified that after Caseworker Goodnight placed the first handcuff on his wrist, the cuff was tightened and his wrist was bleeding and in pain.[4]  [Filing No. 83-4 at 49.]  He described his wrist as having an "abrasion," "like cuts in different parts," and he also felt popping in his arm and wrist.  [Filing No. 83-4 at 58-59.]  When asked whether he told Defendants that his arm and wrist hurt during the incident, Mr. Phillips responded "I was – yeah.  Yeah, by screaming.  By screaming in pain, yeah.  Absolutely I did, by screaming in pain."  [Filing No. 83-4 at 59.]  He recalls requesting to be taken to the medical unit.  [Filing No. 83-4 at 60-61.]

Later that same day, Mr. Phillips submitted a Request for Health Care Form in which he stated "My right arm was snatched out of the cuff port while handcuffed and my shoulder and my wrist was hyperextended and my shoulder and wrist made a cracking sound and I[']m in extreme pain.  This was done by Officer [Surguy]."  [Filing No. 83-7.]  Health care staff later wrote on the form "Refuse visit."[5]  [Filing No. 83-7.]

---

[3] Filing No. 83-6 is a video of the hallway outside of the legal holding cell.  The Court has reviewed the video, which shows Mr. Phillips, Caseworkers Solomon and Goodnight, and Sgt. Surguy at the far end of the hallway, so it is somewhat difficult to observe the individuals' movements, but the video does reflect that Mr. Phillips attempted to break free and that Sgt. Surguy forced him up against the wall to gain control of him.

[4] Defendants did not observe any visible injuries on Mr. Phillips' wrist or body, and they aver that Mr. Phillips did not complain that he was in any pain or that the handcuffs were uncomfortable or causing him pain.  [Filing No. 83-1 at 2; Filing No. 83-2 at 2.; Filing No. 83-3 at 2.]  But because the Court must view the facts in the light most favorable to Mr. Phillips as the non-movant, it accepts as true that the first handcuffing caused Mr. Phillips' wrist to bleed and was painful.

[5] A health care staff member signed the Request for Health Care Form on January 30, 2023, which would have been approximately six weeks after the request was submitted.  [Filing No. 83-7.]

Mr. Phillips testified that other than submitting the December 14, 2022 Request for Health Care Form, he did not seek any treatment from medical staff or receive any medical attention for his injuries.  [Filing No. 83-4 at 66; Filing No. 83-4 at 82.]  However, he submitted a second Request for Health Care Form on December 20, 2022 in which he stated: "My right wrist and shoulder is in extreme pain due to being snatched, pulled and hyperextended by Sgt. Surguy.  I have cuts on both wrist[s] and my arm, wrist, and shoulder is in e[x]treme pain." [Filing No. 91 at 19.] Health care staff wrote the following response on the Request for Health Care Form: "Seen. Have been seen.  NSC.  Did not refused sick call.  Vis[i]ble cuts, scrapes and [abrasions] on wrist and notic[e]able clicking and popping sounds in shoulder area.  Scheduled for x-ray."[6] [Filing No. 91 at 19.]

### 3.   *Mr. Phillips' Beliefs Regarding Retaliation by Defendants*

Mr. Phillips believes that Defendants' "motive for retaliation is because [he] had lawsuits against [Defendants'] coworkers," and that "just asking for institutional services…for institutional service of the six-month account balance printout" caused Defendants to retaliate.  [Filing No. 83-4 at 68-69.]  Mr. Phillips believes that Sgt. Surguy was aware of the other lawsuits because Sgt. Surguy is "friends" and "coworkers" and "they communicate with each other." [Filing No. 83-4 at 69.]  Sgt. Surguy never discussed the other lawsuits with Mr. Phillips, but Mr. Phillips heard Caseworkers Solomon and Goodnight make comments about the other lawsuits, although not a specific lawsuit.  [Filing No. 83-4 at 71-73.]

---

Neither party addresses this delay in health care staff completing the Request for Health Care Form or whether Mr. Phillips was not offered treatment until January 30, 2023, although Mr. Phillips states generally in his Affidavit that he "was denied" medical attention.  [Filing No. 89 at 2.]

[6] The health care staff response appears to have been written by two different individuals and no party defines what "NSC" stands for.  [*See* Filing No. 91.]

### 4. *The Lawsuit*

Mr. Phillips initiated this litigation on January 6, 2023, [Filing No. 1], and filed an Amended Complaint on January 27, 2023, [Filing No. 8]. The Court screened Mr. Phillips' Amended Complaint pursuant to 28 U.S.C. § 1915A, and found that the following claims would proceed against all Defendants: (1) an Eighth Amendment Excessive Force claim; (2) an Eighth Amendment Failure to Intervene claim; (3) an Eighth Amendment Deliberate Indifference to a Serious Medical Need claim; and (4) a First Amendment Retaliation claim. [Filing No. 25 at 5.]

### C. Discussion

#### 1. *Eighth Amendment Claims Against All Defendants*

Mr. Phillips alleges Eighth Amendment excessive force, failure to intervene, and deliberate indifference to a serious medical need claims against all Defendants related to their roles in the December 14, 2022 handcuffing incident and the alleged failure to treat his resulting injuries. [*See* Filing No. 25 at 5 (Court's Screening Order setting forth those claims).] The Court considers each Eighth Amendment claim in turn.

##### a. Excessive Force Claim

In support of their Motion for Summary Judgment, Defendants argue that they had a legitimate need to place Mr. Phillips in handcuffs because all inmates within G Cell House must be handcuffed when they are being escorted to and from their cell. [Filing No. 84 at 9.] They assert that after Caseworker Goodnight told Mr. Phillips to "cuff up," he initially refused and then submitted one hand to manual restraints after Caseworker Solomon threatened to use OC Spray. [Filing No. 84 at 9.] Defendants contend that "[a]ny 'tightness' that came from the initial handcuffing by Caseworker Goodnight was caused by [Mr. Phillips'] struggling and movement, which made it difficult to properly place the handcuffs on [him]." [Filing No. 84 at 9.] They argue

that Sgt. Surguy grabbed Mr. Phillips' arm after he turned to avoid the handcuffs, and that Sgt. Surguy knew that offenders could use this tactic to try to pull restraints out of staff's possession. [Filing No. 84 at 9.]  Defendants note that Mr. Phillips was never sprayed with OC Spray and that "there is no evidence that [he] suffered any severe injury as a result of the incident." [Filing No. 84 at 10.]  Finally, they assert that Caseworker Solomon was not involved in the use of any force against Mr. Phillips.  [Filing No. 84 at 10.]

In his response,[7] Mr. Phillips argues that he did not pose a threat or engage in any dangerous behavior to warrant Defendants' use of force.  [Filing No. 90 at 2-3.]  He asserts that "[i]f there were no merits and no truth to [his] claims of excessive force [he] would not have requested video footage of [the] incident itself and [he] would not have been met with resistance in obtaining video footage of [the] incident itself."  [Filing No. 90 at 5.]  Mr. Phillips asserts that the video footage does not show him resisting or pulling the restraints inside the holding cell and that Defendants'

---

[7] Mr. Phillips filed a 5-page Summary Judgment Response, [Filing No. 88], and a 50-page Memorandum In Support of Summary Judgment Motion Response, [Filing No. 90].  Both are handwritten in extremely small font and Mr. Phillips' Memorandum In Support of Summary Judgment Motion Response is at times repetitive and exceeds the 30-page limit set forth in this Court's Local Rules by twenty pages.  *See* S.D. Ind. L.R. 7-1(e)(1) (response briefs "may not exceed 30 pages").  Nevertheless, the Court has done its best to identify the arguments that Mr. Phillips has set forth in his filings.  Further, a portion of Mr. Phillips' Memorandum In Support of Summary Judgment Motion Response discusses his claim that Defendants did not produce all of the available video of the incident.  [*See, e.g.*, Filing No. 90 at 4-6 (discussing Mr. Phillips' requests for video footage and Defendants' alleged failure to preserve or produce such footage).]  This is not a proper topic to raise in response to Defendants' Motion for Summary Judgment and, in any event, Mr. Phillips has already filed various motions requesting more videos and the Court has found that there was "nothing to indicate that Defendants are withholding the video evidence relevant to this case."  [Filing No. 78 at 1; *see also* Filing No. 71; Filing No. 74.]  Additionally, much of Mr. Phillips' Memorandum In Support of Summary Judgment Motion Response focuses on his argument that Defendants' interrogatory responses and affidavits filed in support of their Motion for Summary Judgment are untruthful and contradictory.  [*See, e.g.*, Filing No. 90 at 14-15 (arguing that Defendants' interrogatory responses and statements regarding the December 14, 2022 incident are not truthful).]  The Court has reviewed Defendants' interrogatory responses and their affidavits, and does not find them to be contradictory.  Further, their affidavits are consistent with video footage of the December 14, 2022 incident.

statements regarding the incident are not truthful.  [Filing No. 90 at 13.]  He argues that he complied with "order and discipline" while inside the legal holding cell, followed Defendants' order that he be placed in mechanical restraints, and "only became temporarily non-complian[t] when he requested the Defendants to lo[o]sen the restraint due to pain and bleeding which is a natural response that anyone would have because they are bleeding, in pain, and are experiencing extreme discomfort."  [Filing No. 90 at 34.]  Mr. Phillips asserts that Sgt. Surguy took the "lead strap" that was attached to the handcuff that was on his wrist from Caseworker Goodnight, jerked it, and pulled Mr. Phillips' handcuffed wrist, arm, and shoulder through the handcuff port, which caused a popping sound and resulting injury.  [Filing No. 90 at 34-35.]  He asserts that he "only responded the way he responded outside of [the] holding cell" because Sgt. Surguy had jerked his wrist, arm, and shoulder through the handcuff port.  [Filing No. 90 at 35.]  Mr. Phillips argues further that what happened after he left the legal holding cell is irrelevant to the issue of whether he was subjected to excessive force while in the legal holding cell.  [Filing No. 90 at 35-36.]

In their reply, Defendants reiterate many of their arguments and contend that the video evidence contradicts Mr. Phillips' version of events.  [Filing No. 95 at 1-2.]

### i.  Caseworker Solomon

"'To recover damages under § 1983, a plaintiff must establish that a defendant was personally responsible for the deprivation of a constitutional right.'"  *Whitfield v. Spiller*, 76 F.4th 698, 706 (7th Cir. 2023) (quoting *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995)).  For this purpose, each defendant is considered independently.  *Id.*  There is no evidence that Caseworker Solomon touched Mr. Phillips during the December 14, 2022 incident or was otherwise involved in the application of excessive force.  Indeed, Mr. Phillips only states in his Affidavit that Caseworker Solomon threatened to spray him with OC Spray and yelled obscenities

at him.  [Filing No. 89 at 1-2.]  Because Caseworker Solomon was not personally responsible for any use of excessive force, the Court **GRANTS** Defendants' Motion for Summary Judgment as to Mr. Phillips' Eighth Amendment excessive force claim against him.

### ii.    Caseworker Goodnight and Sgt. Surguy

The Eighth Amendment protects inmates from cruel and unusual punishment, including excessive force by prison officials. *McCottrell*, 933 F.3d at 662.  This rule does not bar *de minimis* force unless the force is "of a sort repugnant to the conscience of mankind." *Wilkins v. Gaddy*, 559 U.S. 34, 37-38 (2010) (per curiam) (cleaned up).  Even if the force applied is not *de minimis*, it remains permissible if it is used "in a good-faith effort to maintain or restore discipline." *McCottrell*, 933 F.3d at 664 (cleaned up).   But malicious or sadistic force – even if it does not cause a serious injury – is prohibited. *Id.*  To distinguish between good faith and malicious force, courts consider several factors, including:

> (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response.

*Id.* at 663; *see also Whitley v. Albers*, 475 U.S. 312, 321 (1986).  These factors are sometimes referred to as the "*Whitley* factors."  Additionally, to survive summary judgment, a plaintiff must present evidence supporting "a reliable inference of wantonness in the infliction of pain." *Id.* at 322.

First, Defendants have averred – and Mr. Phillips has acknowledged – that inmates must be placed in handcuffs when being moved to different locations within PCF.  Any discomfort from the placement of the handcuffs does not support an excessive force claim. *Id.* at 319 ("The infliction of pain in the course of a prison security measure…does not amount to cruel and unusual

punishment simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable, and hence unnecessary in the strict sense.").

As to the additional force used to allow Caseworker Goodnight to place the second handcuff, the summary judgment record contains video of the December 14, 2022 incident. [Filing No. 83-5; Filing No. 83-6.] "[W]here a reliable videotape clearly captures an event in dispute and blatantly contradicts one party's version of the event so that no reasonable jury could credit that party's story, a court should not adopt that party's version of the facts for the purpose of ruling on a motion for summary judgment." *McCottrell*, 933 F.3d at 661 n.9 (citing *Scott v. Harris*, 550 U.S. 372, 380-81 (2007)). Although Mr. Phillips states in his Affidavit that Sgt. Surguy jerked his other wrist and arm through the handcuff port which caused injury, [Filing No. 89 at 2], the video evidence reflects that Mr. Phillips was in a constant state of movement, pacing and rocking, while in the legal holding cell, [*see* Filing No. 83-5 at 6:30-8:00]. While it is difficult to see the precise location of Mr. Phillips' hands, wrists, or arms in the video, it nonetheless supports Defendants' claim that Mr. Phillips was moving around in the legal holding cell and making it difficult for Caseworker Goodnight and Sgt. Surguy to place handcuffs on his second wrist once the first one was secured. Mr. Phillips' and Mr. Mason's Affidavits do not change the Court's analysis. Even if Sgt. Surguy jerked Mr. Phillips' wrist, hand, and arm, the Court finds that Mr. Phillips' constant movement within the legal holding cell and his admitted "temporary non-complian[ce]," [Filing No. 90 at 34], warranted this level of force so that Mr. Phillips could be handcuffed.

Second, the amount of force used was appropriately proportionate to the need to handcuff Mr. Phillips before moving him from the legal holding cell back to his cell. Although Mr. Phillips was warned that he might be sprayed with OC Spray, that never occurred because Sgt. Surguy and Caseworker Goodnight were able to fasten the handcuff on Mr. Phillips' second wrist. *See*

14

*McCottrell*, 933 F.3d at 665 ("[N]ot every malevolent touch by a prison guard gives rise to a federal cause of action," and "the Eighth Amendment's prohibition against cruel and unusual punishments excludes from constitutional recognition *de minimis* uses of force that are not of the kind that would be repugnant to the conscience of mankind.") (quotations and citations omitted).

Third, as to the extent of Mr. Phillips' injury, he states in his Affidavit that the handcuffing incident resulted in "pain, bleeding, and injury that made a popping sound." [Filing No. 89 at 2.] But Mr. Phillips only requested medical treatment twice, and testified in his deposition that while he still experiences some pain, his injuries have healed. [Filing No. 83-4 at 82.]

Fourth, Mr. Phillips' constant movement in the legal holding cell, which made it difficult for Caseworker Goodnight and Sgt. Surguy to handcuff his second wrist, was a security threat to Defendants and they were entitled to maintain a safe environment by applying force so that they were able to fully handcuff Mr. Phillips before moving him from the legal holding cell to his cell. *See Lewis v. Downey*, 581 F.3d 467, 476-77 (7th Cir. 2009) ("Jails are dangerous places, and it is without rational dispute that security officials are justified in maintaining decorum and discipline among inmates to minimize risks to themselves and other prisoners.").

Finally, as noted above, Defendants first threatened Mr. Phillips with the use of OC Spray, but did not ultimately use that tactic. Instead, Caseworker Goodnight and Sgt. Surguy used the less invasive option of applying force to attach the handcuff to Mr. Phillips' other wrist.

After considering the *Whitley* factors, the Court finds that no reasonable jury could conclude that Caseworker Goodnight or Sgt. Surguy used excessive force during the December 14, 2022 incident. The Court **GRANTS** Defendants' Motion for Summary Judgment as to Mr. Phillips' Eighth Amendment Excessive Force claim against Caseworker Goodnight and Sgt. Surguy.

b.  Failure to Intervene Claim

Mr. Phillips alleges that Caseworker Solomon, who was not involved in the use of excessive force, failed to intervene to prevent Caseworker Goodnight's and Sgt. Surguy's use of excessive force.  [*See, e.g.*, Filing No. 90 at 3-4 (Mr. Phillips arguing that Caseworker Solomon "failed to intervene in Defendants J. Surguy['s] and R. Goodnight['s] actions….").]

In support of their Motion for Summary Judgment, Defendants argue that "[e]ven if [Sgt.] Surguy and [Caseworker] Goodnight did use excessive force on [Mr.] Phillips, there is no evidence that [Caseworker] Solomon would have had the opportunity to react to stop [them] from using the excessive force in such a short amount of time."  [Filing No. 84 at 10.]

In his response, Mr. Phillips reiterates his allegation that Caseworker Solomon failed to intervene when Caseworker Goodnight and Sgt. Surguy placed mechanical restraints on his wrist "so tight it caused bleeding" and allowed Sgt. Surguy to take the leather strap attached to the handcuff from Caseworker Goodnight and begin to "jerk, pull, snatch, and extend" Mr. Phillips' handcuffed hand, wrist, arm, and shoulder which resulted in pain and injury.  [Filing No. 90 at 3-4.]

Defendants do not address Mr. Phillips' failure to intervene claim in their reply brief.  [*See* Filing No. 95.]

Because the Court has found that Defendants are entitled to summary judgment on Mr. Phillips' underlying claim for excessive force, any related claim for failure to intervene in the use of excessive force fails as a matter of law.  *Fillmore v. Page*, 358 F.3d 496, 506 (7th Cir. 2004) ("Simply put, there was no constitutionally impermissible failure to intervene because there was

no violation that compelled intervention."). Accordingly, the Court **GRANTS** Defendants' Motion for Summary Judgment as to Mr. Phillips' Eighth Amendment Failure to Intervene claim.[8]

### c. Deliberate Indifference Claim

In support of their Motion for Summary Judgment, Defendants argue that there is no evidence that Mr. Phillips suffered from a sufficiently serious medical condition. [Filing No. 84 at 12.] They assert that Mr. Phillips contradictorily claimed he was bleeding from the handcuffs, then claimed that he had an "abrasion" on his wrist, then claimed that he felt popping in his arm and wrist. [Filing No. 84 at 12.] They note that Mr. Phillips did not remember having a conversation with Defendants after the handcuffing incident, but did remember that he had requested he be taken to the medical unit. [Filing No. 84 at 12.] Defendants admit that Mr. Phillips did not receive medical treatment in connection with his first medical request and then never sought any further treatment. [Filing No. 84 at 12.] Defendants also argue that they were not deliberately indifferent to Mr. Phillips because he was only placed in handcuffs for approximately two minutes and they could not see any visible injuries resulting from the handcuffs. [Filing No. 84 at 12.]

In his response, Mr. Phillips argues that he sought medical treatment on December 14 and December 20, 2022 and that "[i]f [he] would have refused the medical attention and treatment on [the] 12/14/22 attempt, he would not have made [a] second medical attention and treatment attempt 6 days later on 12/20/22." [Filing No. 90 at 12; *see also* Filing No. 90 at 48.] He asserts that he "does not have to show that [Defendants] knew exactly what was wrong with him or what its

---

[8] The Court identified a failure to intervene claim against all Defendants in its Screening Order, [*see* Filing No. 25 at 5], but Mr. Phillips only discusses such a claim in connection with Caseworker Solomon. To the extent that Mr. Phillips intended to assert claims against Caseworker Goodnight and Sgt. Surguy for a failure to intervene in each other's use of excessive force, such claims would similarly fail since the Court has found that there was no underlying use of excessive force.

consequences could be if it was clear [he] had a serious problem and the Defendants disregarded it." [Filing No. 90 at 12; *see also* Filing No. 90 at 49.]  Mr. Phillips contends that Defendants "interfered with medical judgment with factors unrelated to [his] medical needs when they influenced and convinced facility medical staff to lie and say that [he] refused medical attention and treatment to create systemic deficiencies in medical care protocol and procedures to make unnecessary suffering inevitable for [him]." [Filing No. 90 at 49-50.]

Defendants argue in their reply that Mr. Phillips testified that he never sought any medical treatment beyond submitting his December 14, 2022 Request for Health Care Form and that, in any event, the Forms "do not show that Defendants were aware of [his] condition following the December 14, 2022, interaction" and Mr. Phillips "offers no evidence that Defendants were ever aware that he filed the health care request slips." [Filing No. 95 at 3.]  They contend that "[Mr. Phillips'] assertions that Defendants prevented him from receiving medical treatment are conclusory and not based on any facts." [Filing No. 95 at 3.]

The Eighth Amendment's prohibition against cruel and unusual punishment imposes a duty on the states, through the Fourteenth Amendment, "to provide adequate medical care to incarcerated individuals." *Boyce v. Moore*, 314 F.3d 884, 889 (7th Cir. 2002) (citing *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)).  "Prison officials can be liable for violating the Eighth Amendment when they display deliberate indifference towards an objectively serious medical need." *Thomas v. Blackard*, 2 F.4th 716, 721–22 (7th Cir. 2021).  "Thus, to prevail on a deliberate indifference claim, a plaintiff must show '(1) an objectively serious medical condition to which (2) a state official was deliberately, that is subjectively, indifferent.'" *Johnson v. Dominguez*, 5 F.4th 818, 824 (7th Cir. 2021) (quoting *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016)).

The Court assumes for purposes of the summary judgment motion that Mr. Phillips' injuries from the December 14, 2022 handcuffing incident were objectively serious. To avoid summary judgment, then, the record must allow a reasonable jury to conclude that Defendants acted with deliberate indifference – that is, that they "consciously disregarded a serious risk to [Mr. Phillips'] health." *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 241 (7th Cir. 2021) (cleaned up).

Deliberate indifference requires more than negligence or even objective recklessness. *Id.* Rather, Mr. Phillips "must provide evidence that an official actually knew of and disregarded a substantial risk of harm." *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016). Even assuming that Mr. Phillips did not refuse treatment related to his December 14, 2022 request for medical treatment but rather was denied treatment, he has not presented any evidence that Defendants knew of that request or his December 20, 2022 request and somehow prevented him from receiving medical treatment. Mr. Phillips contends that because Defendants knew that he had filed lawsuits against some PCF corrections officers, they interfered with his ability to obtain medical care. But he has not presented any evidence to support this argument, so it is waived. Absent such evidence, a reasonable jury could not conclude that Defendants were deliberately indifferent to Mr. Phillips' medical needs and the Court **GRANTS** Defendants' Motion for Summary Judgment on Mr. Phillips' Eighth Amendment Deliberate Indifference claim.

### 2. *First Amendment Retaliation Claims Against All Defendants*

Mr. Phillips asserts a First Amendment retaliation claim against all Defendants based on the theory that Defendants used excessive force against him because he requested his Six-Month Account Statement. [Filing No. 8 at 2 (Mr. Phillips alleging in his Amended Complaint that Caseworker Solomon violated his First Amendment rights "because he retaliated against [him] for asking for a Transaction History Inquiry"); Filing No. 25 at 5 (Court's Screening Order in which it

found that "the amended complaint alleges that [Defendants] used excessive force because Mr. Phillips asked for a 6-month institutional trust account statement, which he is required to submit to file a motion to proceed *in forma pauperis* in federal court").]

In support of their Motion for Summary Judgment, Defendants argue that Mr. Phillips' request for his Six-Month Account Statement was not protected speech and that he has not presented any evidence that he "suffered a deprivation likely to deter a person of ordinary firmness from submitting similar requests in the future." [Filing No. 84 at 15.] They also contend that there is no evidence that Defendants "were in any way motivated by [Mr. Phillips'] request for his [Six-Month Account Statement]." [Filing No. 94 at 16.] Finally, Defendants assert that they are entitled to qualified immunity on Mr. Phillips' First Amendment retaliation claim because it was not clearly established that "an inmate's request to review their trust account records constitutes protected speech under the First Amendment." [Filing No. 84 at 17.]

Mr. Phillips argues in his response that Defendants all had a motive to retaliate against him by using excessive force because he was receiving legal mail related to several lawsuits he had filed against Defendants' "friends and co-workers" and because he needed his Six-Month Account Statement to "provide financial proof" in connection with a new case he was filing. [Filing No. 90 at 7.] He argues further that Defendants "den[ied] him a service required to access the courts through civil complaints in which [he] intended on communicating legal matter." [Filing No. 90 at 45.]

Defendants reiterate their arguments in their reply. [Filing No. 95 at 3-4.]

"A public official is entitled to qualified immunity from suit unless he [or she] violated a clearly established constitutional right." *Dockery v. Blackburn*, 911 F.3d 458, 466 (7th Cir. 2018) (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). Whether qualified immunity applies

involves two questions, which may be addressed in either order: "(1) whether the facts alleged…by the plaintiff establish a violation of a constitutional right, and (2) if so, whether that right was clearly established at the time of the defendant's alleged misconduct." *Dockery*, 911 F.3d at 466. The Court first considers whether Mr. Phillips' constitutional right was clearly established.

The "clearly established" standard ensures "that officials can 'reasonably…anticipate when their conduct may give rise to liability for damages.'" *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (quoting *Anderson v. Creighton*, 483 U.S. 635, 646 (1987)).  To be "clearly established," a constitutional right "must have a sufficiently clear foundation in then-existing precedent." *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018).  Given this emphasis on notice, clearly established law cannot be framed at a "high level of generality." *al-Kidd*, 563 U.S. at 742.  "A rule is too general if the unlawfulness of the officer's conduct 'does not follow immediately from the conclusion that [the rule] was firmly established.'" *Wesby*, 583 U.S. at 64 (quoting *Anderson v. Creighton*, 483 U.S. 635, 641 (1987)).  Although "a case directly on point" is not required, "precedent must have placed the…constitutional question beyond debate." *White v. Pauly*, 580 U.S. 73, 79 (2017) (cleaned up).  Put slightly differently, a right is clearly established only if "every reasonable official would have understood that what he is doing violates that right." *Taylor v. Barkes*, 575 U.S. 822, 825 (2015).  "The Supreme Court's message is unmistakable: Frame the constitutional right in terms granular enough to provide fair notice because qualified immunity 'protects all but the plainly incompetent or those who knowingly violate the law.'" *Campbell v. Kallas*, 936 F.3d 536, 546 (7th Cir. 2019) (quoting *Kisela v. Hughes*, 584 U.S. 100, 104 (2018) (quotation marks omitted)).  Qualified immunity thus "balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield

21

officers from harassment, distraction, and liability when they perform their duties reasonably."

*Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

Here, Mr. Phillips does not provide any caselaw, nor has the Court located any, clearly establishing that requesting to immediately be provided a Six-Month Account Statement is protected speech under the First Amendment. Accordingly, Defendants are entitled to qualified immunity on Mr. Phillips' First Amendment retaliation claim.

Additionally, and in any event, the evidence does not indicate that a constitutional violation occurred. Mr. Phillips avers that his request for his Six-Month Account Statement was denied, [Filing No. 89 at 1], but Caseworkers Solomon and Goodnight further explain that they were not able to process his request at that moment but that he could submit a written request to Caseworker Goodnight who would get the information for him, [Filing No. 83-1 at 1; Filing No. 83-2 at 1]. Mr. Phillips has not presented any evidence that he submitted a written request for the Six-Month Account Statement to Caseworker Goodnight and that his written request was denied. Further, there is no evidence that Sgt. Surguy was present when Mr. Phillips requested the Six-Month Account Statement, and he cannot have acted out of retaliation for the request if he was not aware of it. Finally, the Court has already found that Caseworker Goodnight and Sgt. Surguy did not use excessive force against Mr. Phillips.

Because there is no clearly established law indicating that requesting the Six-Month Account Statement was a protected First Amendment activity and since there is no evidence that Mr. Phillips' constitutional rights were violated, Defendants are entitled to qualified immunity on Mr. Phillips' First Amendment Retaliation claim and the Court **GRANTS** Defendants' Motion for Summary Judgment on that claim.

## III.
### CONCLUSION

For the foregoing reasons, the Court:

- **GRANTS** Defendants' Motion to Strike Plaintiff's Sur-Reply, [98];

- **DENIES** Plaintiff's Motion to Strike the Defendants['] Motion to Strike Plaintiff['s] Sur-Reply, [99];

- **DIRECTS** the Clerk to **STRIKE** Plaintiff's Sur-Reply, [97]; and

- **GRANTS** Defendants' Motion for Summary Judgment, [82].

Final judgment shall enter accordingly.

Date: 3/24/2025

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**

**Distribution via United States Mail to:**

James E. Phillips
#106333
Wabash Valley Correctional Facility
6908 S. Old US Hwy 41
Carlisle, IN 47838